JOHN DENASH,

*vs.*

SECURITY TRUST AND SAFE DEPOSIT COMPANY, Executor of the last Will and Testament of Patrick Denash, deceased.

*New Castle, Nov.* 3, 1913.

In an action against the executor of a decedent, complainant, who had carried on transactions with decedent, is incompetent to testify.

In a suit against the executor of a decedent for an accounting for the profits of a speculation undertaken by decedent for the benefit of complainant, evidence *held* insufficient to entitle complainant to relief.

In chancery, the answer is twofold in character, containing the discovery and setting up the defense on which the defendant relies to defeat the bill; and he cannot avail himself of any defense not pleaded.

In suit against an executor, where the answer only denied the averments of the bill on information and belief, and called for proof, the executor is entitled to disprove complainant's contention that his testator entered into an agreement in England in a certain year, and to show that certain letters claimed to have been signed by testator were forgeries.

Bill by John Denash against the Security Trust and Safe Deposit Company, executor under the last will and testament of Patrick Denash, deceased.

The facts appear in the opinion.

*Henry R. Bringhurst, Jr.,* for the complainant.
*J. Frank Ball,* for the defendant.

THE CHANCELLOR. The bill is filed by John Denash, of Ireland, against the executor of his brother, Patrick Denash, who died in November, 1908, in Wilmington, Delaware, where he had resided for more than twenty years. It is claimed that on a date in 1888 John Denash gave to his brother, Patrick Denash, £200 in bank notes and gold at the home of the former in Liverpool, England, Patrick agreeing to speculate with the

.money for the benefit of his brother.   No written statement as to the transaction passed between the parties.   Patrick returned to America, and when he died, twenty years later, owned certain real and personal property in Wilmington, all in his own name, and none of it earmarked in any way as impressed with any trust. The only evidence of the use made by Patrick of the money were statements made in two letters, signed "P. Denash," and addressed to "my dear brother," one dated May 15, 1906, and the other undated, and both purporting to have been written in Wilmington.   These two letters, if they were written or signed by Patrick Denash, indicate rather clearly that he had received £200 from the person to whom the letters were addressed, to be speculated with for the latter's benefit, and that it had been invested in several parcels of real estate, unidentified as to location, but salable at prices which would have realized $4,000 for the person who advanced the money.   The bill asks for an accounting for the moneys and repayment of the fruits of the speculation.

By its answer the executor, upon information and belief, denies that the decedent made any investment for his brother, and declares its general ignorance of the transaction and calls on the complainant to prove the allegations of his bill.   None of the beneficiaries under the will of Patrick Denash were parties to the suit.

Proofs were taken by deposition and exhibits.   Two witnesses for the complainant, whose testimony was taken in Ireland on interrogatories, testified that on or about September 23, 1888, the date fixed in the bill, John paid the money in cash to his brother, at the house of the former in Liverpool, in the presence of the witnesses, on the occasion of a visit of the latter, and on the day prior to his departure by steamer from Liverpool to return to Wilmington.   John Denash testifies to the same facts and to the receipt of the letters from Patrick, above referred to.

For the defendant it is shown conclusively by witnesses that Patrick Denash was in Wilmington on the date and year mentioned in the bill and testified to by the witnesses for the complainant.   The wife and stepdaughter of Patrick testified

that, in 1895 they went with Patrick to England and were at John Denash's house in Liverpool, but denied that the two witnesses for the complainant were there, and denied the payment of the money by John to Patrick. There is, then, an irreconcilable conflict of testimony as to the fact of payment of the money at the time mentioned in the bill, or at any other time, and viewing all the testimony my conclusion is that the complainant has failed to show by evidence, outside the two letters he relies on, the trust relationship on which he relies.

From the two letters it is possible to make out a case for relief, if they were the letters of Patrick Denash to the complainant, John Denash. But they were not addressed to John Denash, and the only testimony to prove either that they were written by Patrick, or addressed to John, is that of John, the complainant. This testimony is excluded by the law of this State. Here, in cases where an executor or administrator is a party to a cause, neither party can testify either as to the original transaction or to the receipt of the letters from Patrick Denash, for both matters are within the letter and spirit of the prohibition of the statute. No effort was made by the complainant to prove the signature or handwriting of Patrick Denash, but on the other hand there is testimony by an expert in handwriting expressing an opinion, in not very strong terms, based on a comparison of handwriting of letters from John Denash, that the two letters relied on by the complainant as being letters received from Patrick Denash, were in the handwriting of the complainant. There were also letters from the complainant to his brother, Patrick, and others, offered in evidence, between 1906 and 1909 which might be construed as inconsistent with the existence of the trust relation claimed by the complainant. On the whole, then, there is no satisfactory evidence to show that the two letters purporting to be from Patrick Denash were from him to his brother, John Denash, and so the proofs of the complainant, of all kinds, are insufficient. There are also elements of improbability respecting the claim, under all the facts, which, in the absence of some clear, uncontradicted

testimony, a judge or jury would rightly consider in reaching a conclusion.

The conclusion that the complainant is not entitled to the equitable relief sought is based largely on the defects in the proofs made by him. The complainant's counsel argued that practically all the testimony submitted by the defendant was inadmissible, inasmuch as the defenses which such testimony substantiated were not set up in the answer. It is, of course, true that in chancery an answer is twofold in character, in that it contains discovery and sets up the defense on which the defendant relies to defeat the bill, and, furthermore, that a defendant cannot avail himself of any matter of defense which he has not set up in his answer, even though it should appear in his evidence. *Langdell's Summary of Equity Pleading*, 90. It is urged by the complainant that the defendant, because it did not set up in its bill the defenses (1) that Patrick Denash was in America and not in England in 1888, the year in which the money was paid, as claimed in the bill, and (2) that the two letters were forgeries, it could prove facts to make out these defenses. But this contention is obviously unsound. The defendant being an executor, in its answer to the bill could and should make answers on information and belief as to matters to which, as it says therein, it was a stranger. 2 *Daniell's Chancery Practice*, *255. This it did, and thereby put the complainant to the proof of all the averments of his bill necessary to establish his case without the benefit of any discovery or admission of the defendant. The defendant sets up in the proof no affirmative defense, but a negative one, and can do so without an express denial of the facts charged by the complainant, because of its representative character. The same is true as to the testimony respecting the forgery, for the letters are not attached to the bill, or even a copy thereof, and until produced in evidence the defendant could neither admit or deny their authenticity, and when produced could surely show the forgery of them as a defense. The testimony of the defendant, speaking generally, was, therefore, admissible in this case, even though the defenses to which the testimony was applicable were not set out in the answer.

For the reasons stated, then, I am convinced that the complainant has failed to show satisfactorily that he is entitled to the relief sought, and the bill should be dismissed with costs on the complainant.